**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-12449

————————————

JOSHUA PHILLIPS,

*Plaintiff-Appellant,*

*versus*

CITY OF HANCEVILLE ALABAMA,
KYLE DUNCAN,
JOSH HOWELL,
LOWELL ADAM HADDER,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:22-cv-00987-LCB

————————————

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER,
Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether three police officers and the City of Hanceville are entitled to summary judgment on claims of false arrest, retaliatory arrest, and excessive force. When Joshua Phillips visited the Hanceville police station to file a complaint, he got into an argument with Officers Kyle Duncan and Josh Howell, which led to his arrest. Phillips alleges that the officers employed excessive force during that arrest and that Deputy Chief Adam Hadder assaulted him in the municipal jail hours later. The district court granted summary judgment for the officers and the City. We affirm.

## I. BACKGROUND

Body-worn and closed-circuit cameras captured most events at issue. We review the events "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). We construe the alleged events not captured on videotape in the light most favorable to Phillips. *Baxter v. Santiago-Miranda*, 121 F.4th 873, 883 (11th Cir. 2024).

On the morning of August 26, 2020, Joshua Phillips stopped his automobile at a Hanceville Police Department roadblock. Officers Kyle Duncan and Josh Howell recognized Phillips and asked him to produce his driver's license. But Phillips refused and immediately became combative and rude. Phillips eventually showed his license, and the officers allowed him to leave.

About two weeks later, Phillips encountered Officers Duncan and Howell at a convenience store. Phillips talked with Duncan cordially inside the store. But when he left the store, he saw Howell

arrive in his personal vehicle and not in uniform. Howell approached Phillips within a "foot from [his] face" and told him "he had a problem with" him. Phillips did nothing, and Howell entered the store. A few seconds later, Phillips followed Howell into the store and approached Duncan. He asked Duncan to write a report about his confrontation with Howell, but Duncan refused.

Phillips then drove to the police station. He approached the dispatcher and asked to file a complaint about Howell. The dispatcher told Phillips she would call someone to assist him. Phillips waited in the hallway for about five minutes until Duncan and Howell arrived. Duncan greeted Phillips and asked why he was there. Phillips said he wanted to file a complaint about his encounter with Howell at the convenience store. Howell defended his conduct, and he and Phillips began to argue.

Duncan attempted to deescalate the situation but eventually became frustrated. He told Phillips that he "d[id]n't have a valid complaint," and refused to write a report. He then told Phillips, "We're done, go ahead and leave," and threatened to arrest him for disorderly conduct if he did not comply. Phillips declined to leave despite Duncan's repeated orders to do so.

When Phillips eventually started to leave, Duncan walked behind him, put his hand on Phillips's back, and lightly pushed him toward the exit. Phillips clenched his fists, turned toward Duncan, and yelled "don't fucking touch me." The officers immediately attempted to restrain Phillips. Duncan wrapped his arm around the back of Phillips's neck while Howell grabbed his torso from behind.

Phillips resisted, so Duncan pulled him to the ground. Howell, now on top of Phillips, grabbed one of Phillips's arms while Phillips yelled "get off of my back," but he could not fully restrain Phillips. A third officer approached. Phillips, still unrestrained, managed to stand up and continued to struggle for about 45 seconds until the officers could handcuff him.

As the officers prepared to move Phillips to a holding cell, they pressed him against the wall. A few seconds later, Phillips leaned away from the wall and turned to confront Howell, who pushed Phillips back into the wall. The officers then escorted Phillips out of the hallway to a holding cell.

The next sequence does not appear on the video. Phillips remained in his holding cell for "a couple hours" until an officer retrieved him for pre-release booking. While waiting on a bench in the booking room, Phillips began to complain to Deputy Chief Adam Hadder that his arrest "ain't right" and that he "ha[d]n't even committed a crime." Hadder initially ignored him, but as Phillips became increasingly animated, Hadder "told him he needed to quiet[] down so he could be released from jail." Phillips instead "got louder, stood up off the bench, [and] began cussing." Hadder "told him he couldn't be released" in his present state and that "he needed to go back into the jail until he could calm down and cooperate with the release process." Then, according to Phillips, Hadder "got in [his] face, backed [him] into the wall," and "spit . . . in [his] face." Hadder "grabbed [Phillips] by the neck and forcefully walked [him] back to [his] cell." The officers released Phillips later that day.

He faced charges of disorderly conduct and resisting arrest, which prosecutors later dropped.

Phillips sued Officers Duncan, Howell, and Hadder and the City of Hanceville for violating his constitutional rights. *See* 42 U.S.C. § 1983. He alleged that Duncan and Howell unlawfully arrested him without probable cause. *See* U.S. CONST. amends. IV, XIV. He also alleged that Duncan, Howell, and Hadder arrested him in retaliation for attempting to file a complaint and employed excessive force against him during his initial arrest and later in the booking room. *Id.* amends. I, IV, XIV. Finally, he sought to hold the City liable for the officers' conduct. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

The district court granted summary judgment for the officers and the City. It ruled that the officers had probable cause to arrest Phillips and employed only *de minimis* force. And it ruled that the City was not liable under section 1983 because Phillips failed to prove a constitutional violation.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo. Settle v. Collier*, 160 F.4th 1282, 1287–88 (11th Cir. 2025).

## III. DISCUSSION

We divide this discussion into two parts. We first explain that the officers are entitled to qualified immunity on all three

claims. We then explain that the City is entitled to summary judgment because Phillips has not established an underlying constitutional violation.

### A. The Officers Are Entitled to Qualified Immunity.

"Qualified immunity shields from suit a police officer acting within his discretionary authority unless a plaintiff establishes that the officer violated a constitutional right that was clearly established at the time of the alleged violation." *Marbut v. Phillips*, 176 F.4th 1256, 1262 (11th Cir. 2026) (citation modified). Because Phillips does not dispute that the officers were performing discretionary functions, we must decide whether they violated his clearly established constitutional rights. We address Phillips's claims in turn.

### 1.   Phillips's Claim for False Arrest Fails Because the Officers Had Probable Cause to Arrest Him.

Phillips first argues that Officers Duncan and Howell unlawfully arrested him. The Fourth Amendment protects against "unreasonable . . . seizures." U.S. CONST. amend. IV. "An officer violates a person's Fourth Amendment right against unreasonable seizures if [he] arrests that person without probable cause." *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023).

The officers had probable cause to arrest Phillips for disorderly conduct. Under Alabama law, "[a] person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof," he "[e]ngages in fighting or in violent tumultuous or threatening behavior," or "[m]akes unreasonable noise." ALA. CODE § 13A-11-

7(a)(1)–(2). Phillips engaged in "threatening behavior" when he turned toward Duncan with balled fists and screamed at him. *Id.* § 13A-11-7(a)(1). And he made "unreasonable noise," *id.* § 13A-11-7(a)(2), when he "yelled in front of police officers . . . in a public area of the police station," *Hutchins v. Alexander City*, 822 So. 2d 459, 462 (Ala. Crim. App. 2000).

The officers also had probable cause to arrest Phillips for trespass in the second degree. A person commits that offense if "he knowingly enters or remains unlawfully in a building." ALA. CODE § 13A-7-3(a). Phillips asserts that he did not trespass because he was leaving the police station when the officers arrested him. But Phillips initially declined to leave and began to depart only after Duncan instructed him to do so more than a dozen times. Although Phillips eventually began to exit, he stopped and turned around to confront Duncan. On these facts, a reasonable officer could conclude that Phillips violated section 13A-7-3(a).

2. Phillips Has Not Established a Claim for Retaliatory Arrest.

Phillips next argues that Officers Duncan, Howell, and Hadder arrested him in retaliation for his attempt to file a complaint, in violation of the First Amendment. For that claim, Phillips must "plead and prove an absence of probable cause as to the challenged retaliatory arrest." *Prospero v. Sullivan*, 153 F.4th 1171, 1183 (11th Cir. 2025) (citation modified); *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019). Because the officers had probable cause to arrest Phillips, his claim for retaliatory arrest fails.

3.  Phillips's Claim for Excessive Force Fails Because the Officers
Used *De Minimis* Force.

An officer's use of force is constitutionally permissible if it is "reasonably proportionate to the need for it." *Marbut*, 176 F.4th at 1267 (citation modified). We evaluate the reasonableness of force based on the totality of the circumstances, including "the severity of the crime, the danger to the officer or others, and the risk of flight." *Id.* (citation modified). Phillips contends that Officers Duncan and Howell used excessive force when arresting him in the hallway and that Deputy Chief Hadder used excessive force during the altercation in the booking room. We disagree.

a. <u>Duncan and Howell Did Not Employ Excessive Force.</u>

Duncan and Howell did not employ excessive force while arresting Phillips. Because the officers were justified in arresting Phillips, they "necessarily" had "the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). And we have explained that an officer's use of *de minimis* force while effecting an arrest does not violate the Fourth Amendment. *See Baxter v. Roberts*, 54 F.4th 1241, 1269 (11th Cir. 2022).

The officers' use of force was *de minimis*. After Phillips turned and confronted Duncan, the officers attempted to restrain him. Duncan put his arm around the back of Phillips's neck while Howell grabbed his torso. Phillips resisted, and Duncan pulled him to the ground. After multiple minutes, the officers finally managed to handcuff him. We have held that similar uses of force are

"clearly" *de minimis*. *See, e.g.*, *id.* (holding that "grab[bing]" a "physically resisting" suspect's arm, "forc[ing] [him] to the ground," "twist[ing] his arm around and jerk[ing] it up," and "then plac[ing] him in handcuffs" was *de minimis*); *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (holding that an officer employed *de minimis* force when he "grabbed [a suspect] by the arm, forced him to the ground, placed him in handcuffs, and searched him"); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559–60 (11th Cir. 1993) (holding that placing a suspect in a brief chokehold was *de minimis* force), *modified*, 14 F.3d 583 (11th Cir. 1994); *see also Nolin v. Isbell*, 207 F.3d 1253, 1256 (11th Cir. 2000) (reciting *Post*'s holding). Duncan and Howell's analogous conduct is likewise *de minimis*.

Phillips responds that even if some force was justified to arrest him, Howell used excessive force when he pushed Phillips into the wall after he was handcuffed and "could not have reasonably posed an immediate threat." But the video depicts Phillips attempting to move away from the wall and getting in Howell's face. Howell reasonably pushed Phillips back against the wall to subdue him. *See Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010) ("For even minor offenses, permissible force includes . . . pushing into walls."). Phillips also contends that he suffered significant injuries. But "established examples of *de minimis* force do not cease to be *de minimis* when they produce unexpected injuries." *Marbut*, 176 F.4th at 1267.

### b. Hadder Did Not Employ Excessive Force.

Phillips next contends that Deputy Chief Hadder used excessive force when he "grabbed [him] by the neck" in the booking room and "forcefully walked [him] back to [his] cell." The Due Process Clause of the Fourteenth Amendment governs that claim because Phillips was a pre-trial detainee when he encountered Hadder. *See Piazza v. Jefferson County*, 923 F.3d 947, 952 (11th Cir. 2019). In considering the claim, we apply an "objective reasonableness" standard that "has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment." *Id.* at 952–53.

Hadder did not employ excessive force. Phillips does not dispute that he "[w]ouldn't stop yelling," became "very loud and boisterous," and eventually "stood up off the bench . . . [and] began cussing." In the light of Phillips's unruly behavior, Hadder was entitled to use some degree of force to "preserve internal order and discipline and maintain institutional security." *Id.* at 953 (citation modified). Grabbing Phillips by the neck to restrain him and then escorting him back to his cell was reasonable in these circumstances. *Cf. Post*, 7 F.3d at 1559–60 (placing suspect in a chokehold during an arrest is *de minimis* force). Nor did Hadder employ excessive force by "back[ing] [Phillips] into the wall" and "spit[ting] . . . in [his] face." *Brown*, 608 F.3d at 740 ("[P]ermissible force includes . . . pushing into walls."); *cf. DeMallory v. Cullen*, 855 F.2d 442, 444 (7th Cir. 1988) (holding that "a correctional officer spitting upon a

prisoner does not rise to the level of a constitutional violation" under the Eighth Amendment).

To be sure, Phillips at times described the incident in more extreme terms. He stated in his first deposition that Hadder "dr[agged] [him] by [his] neck . . . back to jail." But he later clarified in his second deposition that he understood "dragged" to mean "forcefully being pushed forward." He also opined that Hadder applied "200 or 300 pounds of force" to his neck. We can only understand that opinion testimony as hyperbole. *See* Maureen Funk & Julie Schuppel, *Strangulation Injuries*, 102 WIS. MED. J. 41, 42 (2003) (explaining that "[o]nly 11 pounds of pressure placed on both carotid arteries for 10 seconds is necessary to cause loss of consciousness"). Phillips cannot create a genuine issue of material fact with testimony "so fantastic, so internally inconsistent, or so speculative that it ha[s] no probative value." *United States v. Davis*, 809 F.2d 1509, 1513 (11th Cir. 1987).

*B. The City Has No Liability Without a Constitutional Violation.*

Phillips contends that the City is also liable for the officers' conduct. A municipality may be liable under section 1983 "if the [municipality's] policy or custom caused a deprivation of the plaintiff's federal rights." *Andre v. Clayton County*, 148 F.4th 1282, 1291 (11th Cir. 2025). But municipalities are not liable under section 1983 in the absence of an underlying constitutional violation. *See Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 821 (11th Cir. 2017). Because Phillips failed to prove any constitutional violation, his claim against the City necessarily fails.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the officers and the City.